1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ERNOLD C. JACKSON,                    )   Case No. CV 08-1623 JC
                                      )
                    Plaintiff,        )
                                      )
            v.                        )   MEMORANDUM OPINION AND
                                      )   ORDER OF REMAND
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social                )
Security,                             )
                                      )
                    Defendant.        )
_____   )

I.    SUMMARY

      On March 12, 2008, plaintiff Ernold C. Jackson ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

      This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").[1]  The
///

_____

[1]Plaintiff also filed a response to Defendant's Motion.

1

Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; March 12, 2008 Case Management Order, ¶ 5.

Based on the record as a whole and the applicable law, the decision of the
Commissioner is REVERSED AND REMANDED for further proceedings
consistent with this Memorandum and Opinion and Order of Remand because the
Administrative Law Judge ("ALJ") failed adequately to consider whether plaintiff
met Listing 12.05C.

**II.   APPLICABLE LEGAL STANDARDS**

**A.    Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that he is unable to
engage in any substantial gainful activity by reason of a medically determinable
physical or mental impairment which can be expected to result in death or which
has lasted or can be expected to last for a continuous period of at least twelve
months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
§ 423(d)(1)(A)).  The impairment must render the claimant incapable of
performing the work he previously performed and incapable of performing any
other substantial gainful employment that exists in the national economy.  Tackett
v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step
sequential evaluation process:[2]

(1)    Is the claimant presently engaged in substantial gainful activity?  If
so, the claimant is not disabled.  If not, proceed to step two.

_____

[2]When confronted with a disabled claimant who abuses alcohol and drugs, the ALJ also
must determine whether the claimant would still be disabled if the claimant stopped using
alcohol and drugs.  See Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001); see also
Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).  Under social security law, a claimant,
even though disabled, is not considered disabled if "alcoholism or drug addiction would . . . be a
contributing factor material to the Commissioner's determination that the individual is disabled."
42 U.S.C. § 1382c(a)(3)(J).

2

(2)     Is the claimant's alleged impairment sufficiently severe to limit
his ability to work?  If not, the claimant is not disabled.  If so,
proceed to step three.

(3)     Does the claimant's impairment, or combination of
impairments, meet or equal an impairment listed in 20 C.F.R.
Part 404, Subpart P, Appendix 1?  If so, the claimant is
disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
perform his past relevant work?[3]  If so, the claimant is not
disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
considered with the claimant's age, education, and work
experience, allow him to adjust to other work that exists in
significant numbers in the national economy?  If so, the
claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

---

[3]Residual functional capacity is "what [one] can still do despite [one's] limitations" and
represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 416.945(a).

3

1  2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457

2  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

3  mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>,

4  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

5  mere scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing

6  <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

7        To determine whether substantial evidence supports a finding, a court must

8  "'consider the record as a whole, weighing both evidence that supports and

9  evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>

10  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

11  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

12  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

13  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

14  **III.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

15        **DECISION**

16        On August 12, 2005, plaintiff filed an application for Supplemental Security

17  Income benefits.  (Administrative Record ("AR") 99-101).  Plaintiff asserted that

18  he became disabled on January 1, 2001, due to mental retardation.  (AR 99, 105).

19  The ALJ examined the medical record and, on June 13, 2007, held a hearing at

20  which a medical expert and a vocational expert testified.[4]  (AR 228-262).

21  Although plaintiff's counsel was present, plaintiff did not appear at the June 13,

22  2007 hearing.  (AR 230).

23        On July 11, 2007, the ALJ determined that plaintiff was under a disability,

24  but that a substance abuse disorder was a contributing factor material to such

25

26        [4]The ALJ initially held a hearing on December 7, 2006, at which plaintiff appeared and

27  sought a continuance to obtain representation.  (AR 223-27).  The ALJ continued the matter to
March 13, 2007.  (AR 263-66).  The March 13, 2007 hearing was also continued at plaintiff's

28  request so that his attorney, who was then unavailable, could attend.  (AR 263-66).

determination.  (AR 18, 32).  Accordingly, the ALJ determined that plaintiff had not been "disabled," as defined in the Social Security Act, through the date of the decision.  (AR 18, 32).  Specifically, the ALJ found:  (1) without considering the materiality of plaintiff's substance use, plaintiff suffered from the following severe impairments:  polysubstance abuse, borderline intellectual functioning, and depression (AR 20); (2) if plaintiff stopped the substance use, he would continue to have a severe impairment or combination of impairments (AR 26); (3) without considering the materiality of plaintiff's substance use, plaintiff's impairments or combination of impairments, did meet or medically equal one of the listed impairments (AR 25-26); (4) if plaintiff stopped the substance use, plaintiff's impairments or combination of impairments, would not meet or medically equal one of the listed impairments (AR 26-28); (5) if plaintiff stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels but would have certain nonexertional limitations;[5] (6) plaintiff did not have past relevant work, thus the residual functional capacity to perform her past relevant work was not an issue (AR 31); (7) if plaintiff stopped substance use, there would be a significant number of jobs in the national economy that plaintiff could perform, specifically a vehicle cleaner and hand packager (AR 31-32); and (8) plaintiff was not fully credible.  (AR 30).

The Appeals Council denied plaintiff's application for review.  (AR 6-8).

---

[5]Specifically, the ALJ determined that plaintiff:  (a) would have no limits for understanding, remembering, and carrying out simple instructions; (b) would be able to occasionally understand, remember, and carry out detailed instructions; (c) would not be able to follow complex instructions; (d) would have no limits for making simple judgments or work-related decisions; (e) would be able to occasionally make detailed judgments or work-related decisions; (f) would not be able to make complex judgment or work-related decisions; (g) would not be able to have contact with the public; (h) would be able to have occasional contact with supervisors and coworkers; (i) would be able to maintain average productivity for simple, repetitive tasks; (j) would not be able to work at unprotected heights; (k) would not be able to work under hazardous conditions; and (l) would need to work in a job environment with no more than occasional changes in the environment, where these changes were only simple in character (AR 28).

**IV.   DISCUSSION**

    **A.   A Remand Is Appropriate Due to the ALJ's Assessment That Plaintiff Did Not Meet or Equal Listing 12.05C**

    Plaintiff contends that the ALJ's finding that plaintiff did not meet Listing 12.05C was inconsistent with the ALJ's finding that plaintiff suffered from the severe impairments of borderline intellectual functioning and depression. (Plaintiff's Motion at 3).  For the reasons discussed below this Court concludes that a remand on this basis is appropriate.

    **1.   Pertinent Law**

    An impairment matches a listing if it meets all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099.  An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present.  Sullivan, 493 U.S. at 531.

    In assessing whether an impairment medically equals a listing, the ALJ is to consider all relevant evidence in the case record about the claimant's impairment and its effect on the claimant, as well as the opinion given by one or more medical or psychological consultants designated by the Commissioner.  20 C.F.R. § 416.926(c).  Although the ALJ must consider the opinion of such a consultant on the issue of whether a claimant's impairment meets or equals a listing, the final responsibility for deciding medical equivalence rests with the Administrative Law Judge. 20 C.F.R. §§ 416.926(e), 416.927(e)(2).

    In order to be considered disabled under Listing 12.05, for mental retardation, a claimant must show the following:

///

///

12.05 Mental Retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

. . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05.

### 2.     Pertinent Facts

On November 8, 2005, plaintiff came to Kedren Community Mental Health Center ("Kedren CMHC") with complaints of sadness, poor sleep, poor appetite, occasional thoughts of dying, withdrawn behavior, irritability, and visual hallucinations.  (AR 209).  He reported that he had been smoking marijuana since the age of twelve, he currently smoked it once a week, and he did not want to stop smoking it.  (AR 210).  Plaintiff also stated that he drank "a 40 oz." every other day.  (AR 210).  Plaintiff was diagnosed with cannabis dependence and major depressive disorder, recurrent with psychotic features.  (AR 213).

On November 9, 2005, Dr. Ahmad Riahinejad, a clinical psychologist, conducted a consultative psychological evaluation at the request of the Social Security Administration.  (AR 148-152).  Dr Riahinejad reported that plaintiff stated the following:   He had had difficulty understanding what people told him ever since he was a child.  (AR 148).  He drank forty ounces of beer and smoked marijuana on a daily basis.  (AR 149).  He had completed high school where he

1   attended special education classes.  (AR 149).  He needed help with making

2   meals, shopping, and doing household chores, but not with dressing, bathing, or

3   walking.  (AR 149).

4        Dr. Riahinejad reported that IQ tests showed that plaintiff's verbal IQ was

5   69, his performance IQ was 69, and his full scale IQ was 66.  (AR 151).  The

6   doctor diagnosed plaintiff with polysubstance abuse and borderline intellectual

7   functioning.  (AR 152).  Dr. Riahinejad opined that plaintiff (i) could understand,

8   remember, and carry out simple, repetitive instructions without much difficulty;

9   (ii) would have significant difficulty understanding, remembering, and carrying

10   out complex and detailed instructions; (iii) could accept instructions from a

11   supervisor; (iv) could relate with coworkers; (v) could have difficulty performing

12   in a fast-paced work environment due to his slightly slow motor speed; and

13   (vi) had no problem with persistence.  (AR 152).

14        On April 13, 2006, plaintiff returned to Kendren CMHC with complaints of

15   depression, feelings of hopelessness, being withdrawn/isolated, thoughts of dying,

16   irritability, poor sleep, and visual hallucinations.  (AR 201).  He was diagnosed

17   with marijuana dependence and major depressive disorder, recurrent with

18   psychotic features.  (AR 204).

19        On February 16, 2007, Dr. Elena Kvichko, plaintiff's treating psychiatrist,

20   completed a Mental Impairment Questionnaire.  (AR 185-90).  Dr. Kvichko

21   reported that plaintiff had been seen one to two times per month since April 13,

22   2006.  She noted that plaintiff had been diagnosed with schizophrenia, paranoid

23   type, and had been prescribed Seroquel and Trazodone.  (AR 185).  Dr. Kvichko

24   generally opined that plaintiff would be unable to meet the competitive standards

25   to perform unskilled work, reasoning:

26   ///

27   ///

28   ///

8

[Plaintiff] can become easily distracted and confused.  He experiences
auditory hallucinations and is suspicious of others.  [Plaintiff] may
become easily confused and agitated in stressful situations.  He
displays poor communication, poor impulse control and mistrust of
others.

(AR 187).  Dr. Kvichko also concluded that plaintiff would miss more than four
days of work per month due to his impairment.  (AR 190).  She further opined as
to plaintiff's functional limitations, that plaintiff had (i) moderate restriction of
activities of daily living; (ii) marked difficulties in maintaining social functioning;
(iii) marked difficulties in maintaining concentration, persistence, or pace; and
(iv) experienced one to two episodes of decompensation within a twelve month
period, each of at least two weeks duration.[6]  (AR 189).

On March 23, 2007, Dr. Kvichko completed a Mental Residual Functional
Capacity Questionnaire in which she essentially offered the same opinions as
contained in her February 16, 2007 Mental Impairment Questionnaire.

### 3.    Analysis

As noted above, plaintiff contends that the ALJ's finding that plaintiff did
not meet Listing 12.05C was inconsistent with the ALJ's finding that plaintiff
suffered from the severe impairments of borderline intellectual functioning and
depression.  (Plaintiff's Motion at 3).  This Court concludes that a remand on this
basis is appropriate.

The ALJ found that even if plaintiff stopped using drugs or alcohol, he
would have the severe impairments of borderline intellectual functioning and

---

[6]The ALJ characterized Dr. Kvichko's opinions regarding the four categories of
functional limitations as such doctor's "Paragraph B" opinions.  (AR 26).  As Dr. Kvichko did
not refer to plaintiff's substance use in her assessments, the ALJ only credited her Paragraph B
opinions as an assessment that did not take into consideration the materiality of plaintiff's
substance use.  (AR 26).

9

depression.  (AR 26).  The ALJ also credited the IQ tests conducted by consulting examiner Dr. Riahinejad (seemingly irrespective of any impact from substance use), which reflected that plaintiff's verbal, perform and full scale IQs were between 60 and 70.  Despite the foregoing, the ALJ found that if plaintiff stopped the substance use, plaintiff would *not* meet the criteria of Listing 12.05C (*i.e.*, a valid verbal performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work-related limitation of function) because "[t]he evidence does not indicate that [plaintiff] has any other mental impairment that would impose additional and significant work-related limitation in function."  (AR 28).

Listing 12.00 provides that under Listing 12.05C, "[the Commissioner] will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in [section] . . . 416 .920(c).  If the additional impairment(s) does not cause limitations that are 'severe' as defined in [section] . . . 416.920(c), [the Commissioner] will not find that the additional impairment(s) imposes 'an additional and significant work-related limitation of function,' even if [the claimant is] unable to do [his or her] past work because of the unique features of that work."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A.  Section 416.920(c) addresses a finding of a severe impairment under step two of the sequential evaluation process, and states that a severe impairment is one which significantly limits the claimant's physical or mental ability to perform basic work activities.  <u>Id.</u>  The Ninth Circuit has held that the test is whether the effect of the additional impairment on the claimant's ability is "more than slight or minimal."  <u>Fanning v. Bowen</u>, 827 F.2d 631, 633 (9th Cir. 1987).

In this case, the ALJ specifically found that in addition to borderline intellectual functioning, plaintiff suffered from the severe impairment of

10

1   depression.  (AR 26).  By finding plaintiff's depression to be severe, the ALJ

2   necessarily concluded that this impairment had "more than a minimal effect on

3   [plaintiff's] ability to work."  Webb v. Barnhart, 433 F. 3d 683, 687 (9th Cir.

4   2005).  However, the ALJ failed to resolve the apparent inconsistency between his

5   finding that plaintiff's depression was severe and his finding that plaintiff did not

6   have any other mental impairment that would impose an additional and significant

7   work-related limitation.  Although the ALJ might nonetheless have determined

8   that plaintiff's depression did not impose a significant limitation that is separate

9   and distinct from the limitations caused by his borderline intellectual functioning,

10  the Court cannot so conclude on this record.

11          Defendant argues that plaintiff has not established even the basic criteria for

12  Listing 12.05C in that plaintiff must first demonstrate an onset of the deficient

13  intellectual functioning before the age of twenty-two.  (Defendant's Motion at 4).

14  This argument is unavailing.  The ALJ did not state that plaintiff failed to meet or

15  equal listing 12.05C on this basis.  This Court is constrained to review the reasons

16  cited by the ALJ.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

17  Moreover, several circuits have held that valid IQ tests create a rebuttable

18  presumption of a fairly constant IQ throughout a claimant's life.  See Hodges v.

19  Barnhart, 276 F.3d 1265, 1268 (11th Cir. 2001) (holding that "absent evidence of

20  sudden trauma that can cause retardation, the IQ tests create a rebuttable

21  presumption of a fairly constant IQ throughout [a claimant's] life"); see also

22  Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed

23  to remain stable over time in the absence of any evidence of a change in a

24  claimant's intellectual functioning."); Guzman v. Bowen, 801 F.2d 273, 275 (7th

25  Cir. 1986) (holding that a claimant's IQ relates back and does not just reflect a

26  new occurrence).  The Court finds the reasoning of the Seventh, Eighth, and

27  Eleventh circuits to be persuasive.  Furthermore, the ALJ opined that plaintiff

28  would meet Listing 12.05D if the materiality of plaintiff's substance abuse was not

11

1  considered.  (AR 25-26).  Thus, the ALJ presumably found that plaintiff
2  established the mental impairment prior to the age of twenty-two.

3         For the foregoing reasons, the ALJ's adverse step three finding constitutes
4  error.  This case must be remanded for further consideration and clarification on
5  the ALJ's step three finding.

6  **V.     CONCLUSION**[7]

7         For the foregoing reasons, the decision of the Commissioner of Social
8  Security is reversed in part, and this matter is remanded for further administrative
9  action consistent with this Opinion.[8]

10        LET JUDGMENT BE ENTERED ACCORDINGLY.

11 DATED:   December 11, 2008

12                                  _____
                                                /s/
13                                  Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

---

23        [7]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
   decision except insofar as to determine that a reversal and remand for immediate payment of
24 benefits would not be appropriate.

25        [8]When a court reverses an administrative determination, "the proper course, except in rare
26 circumstances, is to remand to the agency for additional investigation or explanation."
   Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
27 quotations omitted).  Remand is proper where, as here, additional administrative proceedings
   could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
28 1989).